(103 P.3d 486)
No. 91,361

BASIANO NAMELO, SPECIAL ADMINISTRATOR OF THE ESTATE OF PARANG NAMELO, Deceased; BASIANO NAMELO, FOR AND ON BEHALF OF THE HEIRS AT LAW OF PARANG NAMELO, Deceased; and BASIANO NAMELO, Individually; KOSTANDIN KIRIS; SIANA NAMELO; and SANAKIN NAMELO, *Appellants*, v. HELEN BROYLES and CHARLES BROYLES, *Appellees*.

Opinion filed December 17, 2004.

*Robert Forer*, of Lawrence, for appellants.

*Crystal Marietta* and *William Wachter*, of Wilbert & Towner, P.A., of Pittsburg, for appellees.

Before RULON, C.J., KNUDSON, S.J., and WAHL, S.J.

RULON, C.J.: Plaintiffs Basiano Namelo, Special Administrator of the Estate of Parang Namelo, deceased, *et al.*, appeal the district court's order dismissing the lawsuit for failure to prosecute and for violation of the court's order to associate with cocounsel. We affirm.

On July 4, 1996, the leased residence of the plaintiffs burned to the ground, killing Parang Namelo and injuring other members of the household. Two days prior to the running of the statute of limitations, the plaintiffs filed a petition, assigned Case No. 98C152P, against the owners of the residence, defendants Charles and Helen Broyles, claiming damages for negligence and for breach of the implied warranty of habitability.

On November 5, 1998, the defendants served interrogatories, requests for production, and a request for a statement of monetary

damages upon the plaintiffs. When the plaintiffs failed to respond within 30 days, the defendants filed a motion to compel. The district court awarded the plaintiffs an additional 45 days, but the plaintiffs failed to comply. Consequently, upon the defendants' motion, the district court dismissed plaintiff's action without prejudice on September 2, 1999.

On March 2, 2000, the deadline for the 6-month refiling limitation, the plaintiffs again filed suit. On May 16, 2000, the defendants again served interrogatories and requests for production. Not receiving a response from the plaintiffs, the defendants filed a motion to compel discovery on July 13, 2000.

The record is silent until February 7, 2002, when the district court issued a notice of its intent to dismiss the case for lack of prosecution unless the plaintiffs demonstrated a reason which would avoid dismissal. The plaintiffs did file a response indicating an intent to prosecute the case but provided no justification for previously failing to do so.

Nevertheless, the district court scheduled a status conference on March 28, 2002. Prior to the conference, the defendants filed a motion to dismiss, alleging the plaintiffs still had not responded to the defendants' discovery requests. At conference, the plaintiffs declared they were prejudiced by not receiving a copy of the defendants' motion to dismiss prior to the hearing.

The district court considered the arguments of counsel and then ordered the plaintiffs' attorney, Robert Forer, to associate with another attorney who would be approved by the court. The court further ordered the plaintiffs to complete all outstanding discovery. Both requirements had to be satisfied within 45 days. Finally, the court imposed $500 in discovery sanctions against the plaintiffs. A written order effecting the court's order was filed on March 28, 2002, and amended on March 29, 2002.

By May 14, 2002, the plaintiffs had provided the district court with notice they had completed the interrogatories and responded to the defendants' requests for production. Timothy J. Grillot entered an appearance as cocounsel for plaintiffs. Because Grillot was not present for the status conference, some confusion arose as to his intended role. According to Forer, Grillot's position was merely

supervisory. However, the defendants' attorney, William Wachter, believed that Grillot was to provide an active role in the litigation to ensure that the case was prosecuted in a timely fashion.

In July 2002, Forer sent a letter to the assigned judge, requesting the scheduling of a conference to establish litigation deadlines. As we understand, a conference was never scheduled, and Forer did nothing further to schedule a conference. As a result, Grillot filed a motion to withdraw, believing that Forer was ignoring Grillot's advice about scheduling a status conference.

On December 30, 2002, the defendants filed another motion to dismiss on the basis that Forer violated the court's order to associate with another attorney. During a subsequent telephone conference, which is not included in the record, Grillot withdrew his motion, and the defendants withdrew their motion to dismiss.

On January 24, 2003, the defendants provided notice to the plaintiffs of the defendants' intent to depose Basiano Namelo on February 18, 2003. Discovering a scheduling conflict, Forer sent an e-mail message to Wachter on February 14, 2003, requesting a rescheduling of the deposition. The attorneys eventually agreed upon March 12, 2003. However, Forer was obliged to reschedule the deposition again. Thereafter, the parties agreed upon April 17, 2003.

On April 17, 2003, the parties met to take depositions. However, shortly after beginning, Forer became ill. The depositions were terminated before the defendants had the opportunity to depose Basiano Namelo. Forer was subsequently taken to the hospital and admitted.

After being released from the hospital, Forer allegedly contacted Wachter to reschedule the depositions, but Wachter refused, informing Forer of his intent to request a dismissal of the suit. On April 24, 2003, Wachter mailed a letter to the assigned district judge requesting a dismissal of the suit due to Forer's failure to comply with the orders of the court pertaining to the association with counsel which would enable the case to move forward. The defendants formally filed a motion to dismiss the suit after Grillot filed another motion to withdraw from representation of the plaintiffs.

At the hearing on the motion to dismiss, Forer and Grillot both claimed not to have received copies of the defendants' motion to dismiss. The district court proceeded to hear arguments on the motion, allowing Forer to file a written response following the hearing before the court ruled upon the motion.

On June 16, 2003, Forer filed the plaintiffs' response to the motion to dismiss, which was followed by Grillot's response on June 18, 2003. On August 28, 2003, the district court filed a memorandum decision finding the plaintiffs had failed to prosecute the action and had failed to abide by the court's order to associate with cocounsel who would see that the case proceeded in a timely fashion. A journal entry dismissing the plaintiffs' suit was filed on September 19, 2003.

K.S.A. 2003 Supp. 60-241(b) provides statutory authority for a district court to dismiss an action due to a plaintiff's failure to prosecute the case:

"(1) For failure of the plaintiff to prosecute or to comply with these sections or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this paragraph and any dismissal not provided for in this section, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under K.S.A. 60-219 and amendments thereto, operates as an adjudication upon the merits.

"(2) The judge may on the judge's own motion cause a case to be dismissed without prejudice for lack of prosecution, but only after directing the clerk to notify counsel of record not less than 10 days in advance of such intended dismissal, that an order of dismissal will be entered unless cause be shown for not doing so."

Subsection (b)(1) of K.S.A. 2003 Supp. 60-241 is virtually identical to the involuntary dismissal provision in Rule 41(b) of the Federal Rules of Civil Procedure. Interpreting the federal rule, the United States Supreme Court concluded that a court's authority to dismiss a case for lack of prosecution is an inherent power of the judiciary "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash Railroad Co.*, 370 U.S. 626, 630-31, 8 L. Ed. 2d 734, 82 S. Ct. 1386 (1962). Our Supreme Court has similarly acknowledged such inherent power. See *Coutts v. Crider*, 219 Kan. 692, 695, 549 P.2d 1019 (1976)

(citing *Carter v. State Department of Social Welfare*, 186 Kan. 187, 348 P.2d 609 [1960]; *Reddington v. Rank*, 176 Kan. 484, 271 P.2d 807 [1954]).

"Orders of dismissal for want of prosecution rest in the judicial discretion of the district courts in order that they may control their dockets, eliminate procrastination and delay, and expedite the orderly flow of business, subject, however, to statutory notice requirements. Such orders will not be reversed on appeal in the absence of a clear showing of abuse of judicial discretion." *Frost v. Hardin*, 218 Kan. 260, 263, 543 P.2d 941 (1975).

Judicial discretion is abused only where the court's action is deemed arbitrary, fanciful, or unreasonable. If reasonable persons viewing the judicial action could differ about the propriety of the action, an appellate court may not declare the action to be an abuse of discretion. See *Shay v. Kansas Dept. of Transportation*, 265 Kan. 191, 194, 959 P.2d 849 (1998) (quoting *Hawkins v. Dennis*, 258 Kan. 329, 340-41, 905 P.2d 678 [1995]).

On appeal, the plaintiffs contend that although the defendants properly filed a motion to dismiss, the motion was based upon the plaintiffs' alleged failure to obey the district court's March 28 order to associate with a court-approved attorney, not upon the plaintiffs' failure to prosecute the case. As we understand, the plaintiffs argue the district court's dismissal for lack of prosecution was not authorized under K.S.A. 2003 Supp. 60-241(b)(1).

The plaintiffs' argument lacks persuasive legal merit. The prayer for relief contained in the motion states: "The Defendants request the case be dismissed with prejudice for Plaintiffs' counsel's failure to comply with the Court's Order of March 8, 2002 in associating active co-counsel to assist him *in prosecuting the case*." (Emphasis added.) Based upon this statement and the facts related to the long history of the case contained within the motion, the defendants were clearly not concerned with a technical violation of the court's order to associate with cocounsel; but rather defendants were complaining that the spirit of the court's order had been violated by the further lack of prosecution in the case. Under the circumstances presented in this case, the district court was well within its discretion to dismiss the case for lack of prosecution based upon the allegations presented in the defendants' motion to dismiss.

Moreover, a district court's authority to dismiss a case for lack of prosecution is not limited by a defendant's motion to dismiss. In *Link*, the United States Supreme Court rejected an argument that under Fed. R. Civ. Proc. 41, a court cannot, on its own initiative, dismiss a case for want of prosecution. In *Link*, as here, the plaintiff contended that Fed. R. Civ. Proc. 41 provided for an involuntary dismissal for failure to prosecute only upon a motion by the opposing party. Refusing to abrogate the judiciary's inherent power to dispose of cases languishing in the judicial system without a clearer statement of Congress' intent to remove that authority, 370 U.S. at 630-31, the United States Supreme Court rejected *Link*'s due process argument.

"Nor does the absence of notice as to the possibility of dismissal or the failure to hold an adversary hearing necessarily render such a dismissal void. It is true, of course, that 'the fundamental requirement of due process is an opportunity to be heard upon such notice and proceedings as are adequate to safeguard the right for which the constitutional protection is invoked.' *Anderson National Bank v. Luckett*, 321 U.S. 233, 246, [88 L. Ed. 2d 692, 64 S. Ct. 599 (1944)]. But this does not mean that every order entered without notice and a preliminary adversary hearing offends due process. The adequacy of notice and hearing respecting proceedings that may affect a party's rights turn, to a considerable extent, on the knowledge which the circumstances show such party may be taken to have of the consequences of his own conduct. The circumstances here were such as to dispense with the necessity for advance notice and hearing." 370 U.S. at 632.

Rule 41 of the Federal Rules of Civil Procedure only includes a provision equivalent to K.S.A. 2003 Supp. 60-241(b)(1); it does not include a provision similar to subsection (b)(2). By adopting the federal rule and adding subsection (b)(2), the Kansas Legislature provided a clear intent to limit the common-law authority of Kansas courts to dismiss, *sua sponte*, a case for failure to prosecute. *Cf. Link*, 370 U.S. at 631-32 (holding that the federal rule provided no clear expression of intent to abrogate the district courts' inherent power to dismiss cases for lack of prosecution).

When the language of a statute is unambiguous, this court must give effect to the legislative intent expressed in that language. *Williamson v. City of Hays*, 275 Kan. 300, 305, 64 P.3d 364 (2003). In construing the language of a statute, a court should attempt to reconcile every part of a legislative act consistently, harmoniously,

and sensibly, giving effect to the whole legislative act to the extent practicable. See *State ex rel. Morrison v. Oshman Sporting Goods Co. Kansas*, 275 Kan. 763, 768, 69 P.3d 1087 (2003).

Under a plain reading of K.S.A. 2003 Supp. 60-241(b)(2), a district court must provide 10 days' notice to a plaintiff before dismissing a suit for want of prosecution on its own initiative. In this case, the plaintiffs clearly possessed notice of the district court's intent to dismiss the case for lack of prosecution on June 5, 2003, the date of the hearing on the defendants' motion to dismiss, which was nearly 3 months prior to the court's ruling. This notice was sufficient for statutory and constitutional due process requirements.

During the hearing, the district court reminded the plaintiffs' attorney of the reason for ordering him to obtain cocounsel in the case.

"[T]he occurrences or the event that gave rise to this case happened on July 4th, 1996. One month from today it's going to be seven years. The case has been dismissed without prejudice once for nonprosecution. A year and two months ago I made an order that Mr. Forer obtain co-counsel to proceed in this case. . . . For whatever reason Mr. Forer could not prosecute the case, whether or not there were psychiatric or psychological or emotional or physical reasons, whatever they were. And I told you clearly on the record at the time whatever those reasons were Mr. Forer was not able to prosecute the case and unless a lawyer got into the case as co-counsel with him to prosecute the case, get it done in a timely fashion, then it was going to be dismissed. Now, you're arguing about what does supervisory mean. That's not a question. Supervisory means—and it should be communicated clearly to Mr. Grillot, or should have been, and was by me—supervisory means he's in charge of ensuring as an officer of the court that this case gets prosecuted in a timely fashion. That hasn't been done. This thing has gone on and on and on and on. Mr. Forer, you will have ten days from today's date to have in my hands any written response you want to make, any written response to Mr. Wachter's motion, anything else you want to submit."

From this discourse, we understand the district court was not as concerned with Mr. Grillot's role in the litigation as with the significant delay in prosecuting the case, despite assigning cocounsel to the case. Consequently, the plaintiffs and their attorney, Forer, were placed on notice that the court was concerned about the lack of prosecution in the case. When the district court dismissed the suit for want of prosecution in a written memorandum opinion,

dated August 28, 2003, the dismissal sufficiently complied with the notice requirements of K.S.A. 2003 Supp. 60-241(b)(2).

Although the district court clearly possessed the statutory authority to dismiss the suit for a perceived failure to prosecute the case, dismissal of a suit is a sanction generally reserved for extreme cases. See *Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002). Kansas courts have occasionally held a district court to have abused its discretion in dismissing a suit when a lesser sanction would have served to correct the recalcitrant conduct of a party; however, these cases have involved dismissals as sanctions for discovery violations under K.S.A. 2003 Supp. 60-237. See, *e.g., Shay*, 265 Kan. At 196; *Vickers v. City of Kansas City*, 216 Kan. 84, 95, 531 P.2d 113 (1975).

In *Reed*, the federal district court granted summary judgment in favor of an employer when the employee failed to respond to a motion for summary judgment within the statutorily prescribed time period. Noting the district court could not appropriately grant summary judgment unless the record demonstrated no issue of material fact and the moving party was entitled to judgment as a matter of law, the Tenth Circuit Court of Appeals then considered whether summary judgment was appropriate as a sanction merely for failing to respond to the summary judgment motion.

Although clearly distinguishable on its facts from the present case, the *Reed* Court articulated three factors that a court must consider before imposing dismissal or summary judgment as a sanction for violation of procedural rules: "(1) the degree of actual prejudice to the opposing party; (2) the amount of interference with the judicial process; and (3) the culpability of the litigant." 312 F.3d at 1195.

While prejudice is generally presumed when a case has not been diligently prosecuted, see *Coutts*, 219 Kan. at 699-700, the defendants in this case would have no difficulty demonstrating actual prejudice. The fire giving rise to this lawsuit occurred on July 4, 1996. Despite the length of time involved in the prosecution of this case, the only discovery completed was each party's interrogatories. To date, the primary potential witnesses in this case have not been deposed. The defendants have alleged prejudice by the

death of a material witness, a neighbor of the plaintiffs at the time of the fire.

This case has imposed a significant burden upon the judicial system. Since this case was refiled after being dismissed without prejudice in 1999, the district court has had to address a motion to compel discovery; four motions to dismiss for failure to prosecute, either on the court's own motion or upon the defendant's motion; several status conferences; and two motions by cocounsel to withdraw from representation of the plaintiffs. Considering that the only discovery completed in the case is the interrogatories, the time represented by these various motions clearly represents a waste of judicial resources.

Finally, the record clearly provides sufficient evidence from which the district court could have found the plaintiffs or their attorney were culpable in producing the delay in the litigation. While the plaintiffs contend the delays in setting the depositions were caused by justifiable circumstances, including court continuances and the sudden illness of plaintiffs' attorney, the few legitimate excuses provided by the plaintiffs do not justify a delay of nearly 7 years. See *Coutts*, 219 Kan. at 695-700 (rejecting plaintiff's argument that settlement negotiations, illness of the defendant, and the misfiling of a journal entry justified trial preparation extending over a 6-year period).

For similar reasons, the plaintiffs' contention the defendants contributed to the delay by failing to respond to inquiries about deposition dates does not demonstrate the district court abused its discretion in determining this case was not diligently prosecuted. "[T]he primary responsibility for the prosecution of a case lies ultimately upon the plaintiff." 219 Kan. at 700. A single e-mail or telephone call to opposing counsel to reschedule a deposition which had been canceled upon the plaintiffs' initiative does not constitute diligent prosecution of the case.

Based upon the circumstances presented in this case, we firmly conclude the district court did not abuse its discretion in finding the plaintiffs had failed to diligently prosecute this case.

Additionally, the plaintiffs contend the district court abused its discretion in dismissing the suit as a sanction for plaintiffs violating

the court's order to associate with cocounsel. Plaintiffs contend the district court's order was not clear, and, therefore, the plaintiffs had no opportunity to obtain active cocounsel as the district court apparently intended.

Because the district court was well within its discretion to dismiss the case for lack of prosecution, this issue is moot, and this court need not consider such issue. "An appellate court will not render opinions in appeals which present moot issues or where the judgment could have no practical effect on a then-existing controversy." *State v. Aleman*, 16 Kan. App. 2d 784, 786, 830 P.2d 64, *rev. denied* 251 Kan. 940 (1992).

However, even if the issue were properly before the court, the plaintiffs argument provides no basis for relief. The plaintiffs' attorney, Forer, contends he reasonably believed the district court's order involved obtaining an attorney to supervise Forer's work, not to actively participate in the litigation. Even assuming that Forer properly construed the district court's order to require supervision only, the district court made it abundantly clear both at the hearing and in its order that the purpose behind the order to associate with cocounsel was to move the litigation forward. Such did not occur. Whether Grillot was to take an active role in the litigation or merely a supervisory role, Forer's association with Grillot clearly did not accomplish the desired effect.

The district court's order to associate with cocounsel was, in part, a sanction for plaintiffs' failing to move the litigation forward, and in part, the district court's attempt to assist an attorney whose practice was impaired for some unknown reason. When the district court's effort in this regard failed, the district court was within its discretion to order the case dismissed. There was no abuse of discretion.

Affirmed.